Filed 4/24/13  P. v. Oropeza CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARIO LUIS OROPEZA,<br><br>    Defendant and Appellant. | C068391<br><br>(Super. Ct. No. 10F8507) |

A jury convicted defendant Mario Luis Oropeza of, among other things, attempting to deter an officer from performing any duty by means of threat or violence. Defendant now contends (1) the trial court erred in failing to instruct the jury on the lesser included offense of willfully resisting, delaying or obstructing a public officer in the discharge of his duties; (2) the trial court erred in failing to instruct the jury on the requisite specific intent to deter or prevent a police officer from performing his duty; and (3) the cumulative effect of the instructional errors resulted in prejudice.

1

We conclude (1) the trial court did not have a sua sponte duty to instruct on resisting an officer, because the crime of resisting an officer is not a lesser included offense of attempting to deter an officer; (2) the trial court properly instructed the jury on the requisite specific intent; and (3) because there was no instructional error, the claim of cumulative prejudice lacks merit.

We will affirm the judgment.

BACKGROUND

City of Redding Police Officer Nick Weaver saw a car drifting between two lanes and pulled the car over. Defendant was in the driver's seat and his brother Israel Oropeza was in the front passenger seat. Officer Weaver noticed that defendant's eyes were bloodshot, his speech was slurred, and he smelled of alcohol. When asked if he had been drinking, defendant said he drank two beers between noon and the time he was stopped, but he later admitted drinking six beers. Officer Weaver observed that defendant's gait was unsteady, he had difficulty standing up, and he swayed from side to side.

City of Redding Police Officer Brian Torum happened by the scene and stopped. Defendant told Officer Weaver he recently had back surgery but he could perform field sobriety tests. Nonetheless, defendant was argumentative and angry about having to perform the tests, prompting Officer Weaver to request further backup. City of Redding Police Officer Jacob Provencio responded to the call. Officer Provencio was assigned as a DUI (driving under the influence) specialist that night. Officers Weaver and Provencio wore their Redding Police Department uniforms and drove marked patrol cars.

After observing defendant's poor performance on the field sobriety tests, Officer Weaver informed defendant that he was under arrest for suspicion of driving under the influence. Officer Weaver instructed defendant to place his hands behind his back. But defendant threw his baseball cap on the ground, took a few steps toward Officer Provencio and "bladed" his stance like a boxer would assume while fighting.

2

Officer Weaver took out his baton. Officer Provencio pointed his Tazer at defendant because he did not know defendant's intention and defendant did not comply with Officer Weaver's instruction. At that point defendant complied with Officer Weaver's request to put his hands behind his back, and defendant was handcuffed and placed in the back of a patrol car.

While Officers Weaver and Torum evaluated whether defendant's brother was too intoxicated to leave the scene, Officer Provencio remained near the patrol car to complete paperwork. Defendant was yelling. When Officer Provencio turned on the dome light inside the patrol car so he could see what defendant was doing, defendant asked Officer Provencio in a menacing voice if he had a family. Defendant's demeanor was angry and threatening when he asked the question. Officer Provencio asked why defendant wanted to know, and defendant laughed and said at least twice, "Your family is dead. Your family is fucking dead." Officer Provencio opened the rear passenger door of the patrol car and asked defendant if he was threatening Officer Provencio's family. Defendant lunged at Officer Provencio. Using his hand, Officer Provencio grabbed the front of defendant's shirt and pushed defendant back in the patrol car. Defendant continued to say that Officer Provencio's family was dead.

When Officer Provencio activated his digital voice recorder, defendant mouthed the words that Officer Provencio's family was dead but did not say the words aloud. Officer Provencio asked defendant what he was saying. Defendant denied that he said anything and denied that he had threatened Officer Provencio's family. Defendant called Officer Provencio a "fucking faggot liar." A recording of what was captured on Officer Provencio's digital recorder was played at trial.

Officer Weaver subsequently opened the door of the patrol car to ask defendant whether he would submit to a breath or blood test. Defendant responded, "Fuck you, nigger." Defendant said Officer Weaver was "fucking dead" and spit on Officer Weaver, striking him in the chest.

3

When Officer Weaver instructed defendant to lean his head out of the car so the officers could put a spit hood over his head,[1] defendant refused and tried to step out of the patrol car. Officer Weaver ordered defendant to remain in the car. Defendant later complied by placing his head out of the car and Officer Weaver put a spit hood on defendant.

Defendant continued yelling and cursing, and accused one of the officers of punching him in the face. Defendant said someone called him a "spic"[2] and the officers were racist and were trying to "get" defendant. Defendant threatened that Officer Provencio would lose his job because he was racist and someone had hit defendant.

At trial, Officers Weaver, Torum and Provencio denied referring to defendant as a "spic." The officers said they did not hear any officer use that term. The officers also denied hitting defendant or seeing anyone hit defendant.

Because defendant refused to submit to a breath, urine or blood test, Officer Weaver drove defendant to the Shasta Regional Medical Center for a forced blood draw. Defendant remained argumentative with Officer Weaver and was angry about his arrest and having his blood drawn. Defendant's blood had a .16 percent blood alcohol concentration.

Defendant told Officer Weaver that an officer placed a hand around defendant's throat and punched defendant in the right eye. Defendant complained that his eye was swollen shut. Officer Weaver photographed defendant's face; he did not see any injury

---

[1] A spit hood is made of mesh (similar to what a beekeeper wears on his or her head) and is placed on a detained person who spits at officers. The hood does not affect the ability to breathe.

[2] Officer Provencio testified that "spic" is a derogatory term used to refer to someone of Hispanic descent.

to defendant's face or eye, or any marks on defendant's neck. The photographs were received into evidence at the trial.

Defendant testified at trial. He admitted drinking on the evening of his arrest and driving home using back roads so he would not be caught. Defendant admitted he lied to Officer Weaver about the number of beers he had consumed because he did not want to get caught for drinking and driving. Defendant said he complied with Officer Weaver's instructions and elected to take a blood test when Officer Weaver asked him to take a breathalyzer test.

According to defendant, things got scary after he refused to take a breathalyzer test. Defendant was asked whether he was affiliated with a gang and if he had any tattoos. He was told that he was wearing gang paraphernalia because he was wearing a blue University of Nevada hat. Defendant denied any gang affiliation and questioned what that had to do with anything. Defendant denied throwing his hat down.

Defendant testified that Officer Torum pulled out a baton. In response, defendant turned around, pulled down the back of his pants, and said he just had major back surgery and was not looking to fight. Defendant said he complied when directed to put his hands on his head, but he was hit from the back and slammed onto the hood of the patrol vehicle. His hand was twisted to his back and he was placed in handcuffs and in the back of a patrol car.

According to defendant, Officer Provencio arrived at the scene after defendant was placed in the patrol car. Defendant heard Officer Provencio yell at Israel about having a prescription bottle, and defendant yelled that the prescription bottle belonged to defendant. Defendant said Officer Provencio then ran to the patrol car, opened the back passenger door, head-butted defendant, and said "Whoops. Watch your head. Watch your head." Defendant said Officer Provencio also smacked the side of defendant's head, pushed defendant back with his hand and choked defendant's throat so that defendant could not breathe. Defendant said he coughed in Officer Provencio's face while the

5

officer was choking defendant, at which point Officer Provencio called defendant a "spic." But defendant denied spitting at any of the officers. He said he spit at the window of the patrol car because he was angry and Officer Weaver was near the car when he spit.

Defendant admitted being angry and admitted cursing, but only after he was slammed onto the hood of the patrol car. He denied threatening Officer Provencio's family but admitted saying "You're dead, you're fucking dead" in reference to all the officers. Defendant also admitted saying "you wait and see who I am. Wait and see who I am." He testified he was telling the officers their treatment of defendant could affect their jobs. Defendant said he was referring to Officer Provencio when he said "Fucking bitch, this guy hit me." Defendant also admitted saying "Fuck you, nigger."

The prosecution called Officers Provencio and Weaver as rebuttal witnesses. They said defendant was not slammed onto the hood of the patrol car. Officer Provencio denied head-butting defendant and Officer Weaver denied saying defendant was wearing gang paraphernalia.

The jury convicted defendant of attempting, by means of threat or violence, to deter or prevent an executive officer from performing a duty imposed by law (Pen. Code, § 69[3] -- count 1); driving under the influence of alcohol or drugs (Veh. Code, § 23152, subd. (a) -- count 2); driving with 0.08 percent or more, by weight, of alcohol in his blood (Veh. Code, § 23152, subd. (b) -- count 3); and assault on a peace officer (§ 241, subd. (c) -- a lesser included offense to the charge of battery asserted in count 4). In a bifurcated proceeding, the trial court found true an enhancement allegation that defendant was previously convicted of driving under the influence. The trial court suspended

---

[3] Undesignated statutory references are to the Penal Code.

6

imposition of sentence and placed defendant on probation for five years on the condition, among others, that he serve 180 days in jail.

DISCUSSION

I

Defendant contends that, in connection with the count 1 charge of attempting to deter an executive officer from performing any duty by means of threat or violence (§ 69), the trial court failed in its sua sponte duty to instruct the jury on the lesser included offense of willfully resisting, delaying or obstructing a public officer (§ 148, subd. (a)(1)).

Section 69 "sets forth two separate ways in which an offense can be committed." (*In re Manuel G.* (1997) 16 Cal.4th 805, 814.)  The first is attempting to deter an executive officer from performing any duty by means of threat or violence.  (§ 69.)[4]  The second is knowingly resisting, by force or violence, an executive officer in the performance of his duty.  (§ 69.)  Although count 1 of the information alleged both ways of committing the offense, the People elected at the beginning of trial to proceed only on the first way, the attempting-to-deter offense.  Based on that election, the trial court only read to the jury the allegation regarding attempting to deter, and instructed the jury accordingly.

Defendant contends the trial court had a sua sponte duty to instruct on section 148, subdivision (a)(1),[5] because substantial evidence supports a finding that defendant resisted the officers rather than deterring or preventing the performance of their duties.

---

[4] Police officers are executive officers within the meaning of section 69.  (*In re Manuel G., supra*, 16 Cal.4th at pp. 818-819.)

[5] Section 148, subdivision (a)(1) provides, "Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment,

7

Defendant relies on *People v. Lacefield* (2007) 157 Cal.App.4th 249, but that case does not assist him. The Court of Appeal in *Lacefield* held that a section 148, subdivision (a)(1) violation is a lesser included offense of the resisting theory under section 69, but it also recognized that a section 148, subdivision (a)(1) violation is not a lesser included offense of the attempting-to-deter theory. (*Lacefield, supra,* 157 Cal.App.4th at pp. 257-258.)

Defendant does not claim that a section 148, subdivision (a)(1) violation is a lesser included crime of the attempting-to-deter offense. Because the People did not proceed on the resisting theory but instead proceeded under the attempting-to-deter theory, the trial court did not have a sua sponte duty to instruct on section 148. (*People v. Cash* (2002) 28 Cal.4th 703, 737; *People v. Miller* (1994) 28 Cal.App.4th 522, 526.)

Defendant next argues in the text of his opening brief, but not in a heading, that the trial court should also have instructed the jury on the second way that section 69 can be violated, the resisting offense. He says the trial court should not have accepted the prosecutor's election of only one theory. The Attorney General responds that there is no obligation to instruct the jury on a crime for which defendant is not being prosecuted.

In *People v. Lopez* (2005) 129 Cal.App.4th 1508 (*Lopez*), the defendant was charged with both types of section 69 offenses but the trial court instructed the jury only on the resisting offense. (*Lopez, supra*, 129 Cal.App.4th at pp. 1530-1531, fn. 15.) The appellate court held the trial court had a sua sponte duty to instruct the jury on the attempting-to-deter offense because in that case, the prosecutor relied on that theory. (*Id.* at p. 1531.)

But here, unlike in *Lopez*, the People did not rely on the resisting offense and chose not to proceed under that theory. The People were within their authority to elect to

when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment."

prosecute defendant for the attempting-to-deter offense only. (*People v. Birks* (1998) 19 Cal.4th 108, 134-136; *People v. Brigham* (1989) 216 Cal.App.3d 1039, 1051-1052 [rejecting argument that the "People's election to prosecute a case solely as an aiding and abetting crime, which case is equally susceptible of a conspiracy prosecution, remove[d] unfairly the conspiracy defenses he would otherwise assert"].) When the trial court read the charges against defendant, it did not inform the jury that defendant was accused of resisting an executive officer in the performance of his duties. And the jury was never asked to decide whether defendant violated section 69 on that theory. Under these circumstances, the trial court had no sua sponte duty to instruct the jury on the resisting offense. (*People v. Cash, supra,* 28 Cal.4th at p. 737; *People v. Silva* (2001) 25 Cal.4th 345, 371; *People v. Prettyman* (1996) 14 Cal.4th 248, 269-270; *Lopez, supra*, 129 Cal.App.4th at pp. 1530-1531; *People v. Valentine* (2006) 143 Cal.App.4th 1383, 1387; *People v. Miller, supra,* 28 Cal.App.4th at p. 526.)

In arguing that the trial court should have instructed on both types of section 69 offenses, defendant points to the conduct of the prosecutor during trial. But the record does not show error.

During the prosecutor's opening statement, she described what she believed the evidence would show and said she would ask the jury to find the defendant guilty of threatening Officer Provencio. The prosecutor did not say that the jury would be asked to determine whether defendant resisted a peace officer in the performance of his duties, and she did not use the words "resist" or "resisting."

Then, in discussing count 1 during her closing argument, the prosecutor described the elements of an attempting-to-deter offense. She played the audio recording made by Officer Provencio and focused on Officer Provencio's testimony that defendant said Officer Provencio's family was dead. The prosecutor also pointed out instances where defendant displayed aggression toward Officer Provencio. The prosecutor argued that defendant threatened Officer Provencio's family, used violence against Officer

Provencio, and intended to prevent Officer Provencio from doing his duty. Those arguments tracked the elements of the attempting-to-deter offense on which the jury was instructed. The prosecutor did not say, and did not ask the jury to find, that defendant resisted the officers in the performance of their duties. Defendant has not demonstrated that the prosecutor's comments could have misled the jury.

To the extent defendant asserts other purported contentions without including them in a separate heading and without adequate analysis or citations to the record or to authority, they are forfeited. (*Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1345-1346 & fn. 17; *People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4; Cal. Rules of Court, rule 8.204(a)(1)(B).)

II

Defendant next contends the trial court erred in failing to instruct the jury on the requisite specific intent to deter or prevent a police officer from performing his duty. He notes that an attempt done with the intent to delay an officer, rather than to deter or prevent an officer, is not sufficient for a conviction on count 1.

"We determine whether a jury instruction correctly states the law under the independent or de novo standard of review. [Citation.] Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' [Citation.] ' "In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." [Citation.]' [Citation.] 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' [Citation.]" (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

Applying these principles here, we conclude there was no error. The attempting-to-deter offense is a specific intent crime. (*People v. Gutierrez* (2002) 28 Cal.4th 1083,

1154; *People v. Nishi* (2012) 207 Cal.App.4th 954, 967; *Lopez, supra*, 129 Cal.App.4th at p. 1530.) A violation requires the intent to interfere with an executive officer's performance of his duties. (*People v. Gutierrez, supra,* 28 Cal.4th at pp. 1153-1154; *In re Manuel G., supra,* 16 Cal.4th at p. 810; *People v. Nishi, supra,* 207 Cal.App.4th at p. 967.) The trial court instructed the jury accordingly.

The trial court instructed the jury consistent with CALCRIM No. 2651, directing them that in order to find defendant guilty on count 1, the People must prove (1) defendant willfully and unlawfully used violence or a threat of violence to try to prevent or deter an executive officer from performing the officer's lawful duty, and (2) when the defendant acted, he intended to prevent or deter the executive officer from performing the officer's lawful duty. The trial court reiterated that the People must prove beyond a reasonable doubt that defendant acted with the intent to prevent or deter an executive officer from performing the officer's lawful duty. The jury was not instructed that intent to delay is an element of a section 69 violation.

There was no error. (*In re Manuel G., supra,* 16 Cal.4th at p. 815.) Accordingly, we do not discuss defendant's claims of prejudice.

### III

Defendant claims the cumulative effect of the instructional errors resulted in prejudice. Because we conclude there was no error, the claim lacks merit.

### DISPOSITION

The judgment is affirmed.

                                                          MAURO                    , J.

We concur:

          HULL                    , Acting P. J.


          HOCH                    , J.

11